UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEPHEN JOHN KARES,

       Petitioner,

                                      Case No. 2:19-cv-7

v.

                                      Hon. Hala Y. Jarbou

CONNIE HORTON,

       Respondent.

_____/

## OPINION

Petitioner Stephen John Kares is incarcerated with the Michigan Department of Corrections.   Kares seeks a writ of habeas corpus overturning his conviction. (Am. Pet'n, ECF No. 10.)   The matter was referred to a magistrate judge, who produced a Report and Recommendation (R&R, ECF No. 31) that the Court deny Kares's habeas petition.  The R&R determined that Kares's amended petition was untimely.  Even if the petition were timely, the R&R found Kares's claims procedurally defaulted or lacking in merit.

With respect to timeliness, the question is whether a motion for DNA testing and a new trial, filed by Kares in state court, tolled the statute of limitations for Kares to file the present habeas petition.  If the DNA motion tolled the statute of limitations, Kares's habeas petition is timely.  If the DNA motion did not toll the statute of limitations, the Court must deny the petition as untimely.

Kares timely objected, asserting that his petition is timely and that most of his claims are meritorious and not procedurally defaulted.  (ECF No. 36.)  The Court will adopt the R&R.

### I. Procedural History

The R&R gives significant factual background, which the Court will only briefly recite. Simply put, Kares was charged with two counts of first-degree criminal sexual conduct for vaginal

and oral penetration.  (R&R, PageID.1622.)  He was tried in the Shiawassee County Circuit Court.  (*Id.*, PageID.1618.)  In 2012, Kares was convicted of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d, for vaginal penetration and acquitted on the charge of oral penetration.  (*Id.*, PageID.1618.)  He appealed.  (*Id.*, PageID.1623-1624.)  On November 21, 2013, the Michigan Court of Appeals upheld Kares's conviction.  (*Id.*, PageID.1624.)  Kares then sought leave to appeal to the Michigan Supreme Court.  (*Id.*)  The Michigan Supreme Court denied leave to appeal on May 27, 2014.  (*Id.*)  Kares moved for reconsideration, and the Michigan Supreme Court again denied leave to appeal on September 29, 2014.  (*Id.*)  Kares did not seek review from the United States Supreme Court.  (*Id.*)

Simultaneous with his direct appeals, Kares moved for a new trial in the Shiawassee County Circuit Court on May 8, 2013.  (*Id.*, PageID.1625.)  The trial court denied that motion as untimely on June 18, 2013.  (*Id.*)  Kares appealed.  The Michigan Court of Appeals dismissed the appeal as untimely because the trial court's order was not a final order subject to appeal as of right.  (*Id.*)  Where there is no appeal as of right, a person may still seek leave to file an appeal with the Michigan Court of Appeals.  Kares requested leave to appeal the trial court's denial of his motion for a new trial.  (*Id.*)  On March 21, 2013, the Michigan Court of Appeals denied leave to appeal, finding Kares's application lacked merit.  (*Id.*)  The Michigan Supreme Court likewise denied leave to appeal on September 5, 2014.  (*Id.*)

On October 1, 2015, Kares petitioned the Western District of Michigan for a writ of habeas corpus.  *Kares v. Trierweiler*, No. 1:15-cv-992 (W.D. Mich.).  Then, on October 20, 2015, Kares moved the Shiawassee County Circuit Court for relief from judgment under Michigan Court Rule 6.500.  (R&R, PageID.1625.)  The Shiawassee County Circuit Court denied the 6.500 motion on

November 2, 2015, while this Court dismissed the habeas petition without prejudice for failure to exhaust available state-court remedies on January 28, 2016. (*Id.*, PageID.1625-1626.)

Kares sought leave to appeal the denial of his 6.500 motion. (*Id.*) The Michigan Court of Appeals denied leave on September 27, 2016. (*Id.*, PageID.1626-1627.) Kares applied for leave to appeal to the Michigan Supreme Court. (*Id.*, PageID.1627.) The Michigan Supreme Court denied relief on December 27, 2017. (*Id.*)

Then came the motion that the R&R says failed to toll the time to file a habeas petition. On February 9, 2018, Kares brought a motion in the Shiawassee County Circuit Court under Mich. Comp. Laws § 770.16. (*Id.*) The motion requested DNA testing of certain evidence collected during the investigation leading to Kares's conviction. If that request were granted and the resulting DNA tests exculpated Kares, the motion asked for a new trial. The court denied the motion for DNA testing on February 12, 2018. (*Id.*) Kares sought leave to appeal, which the Michigan Court of Appeals denied on August 29, 2018. (*Id.*) The Michigan Supreme Court likewise denied leave to appeal on April 2, 2019. (*Id.*)

Kares filed the present habeas petition on December 21, 2018. (*Id.*)

## II. Standard

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

### III. Analysis

#### A. Timeliness

##### 1. Statutory tolling

The question is whether the motion for DNA testing/new trial was "properly filed" and thus tolled the statute of limitations for Kares to file the present habeas petition. The R&R concluded that that the motion did not toll the statute of limitations. (R&R, PageID.1637.) Kares objects that it did. (Pet'r's Objs., PageID.1726-1727.) Because this issue is dispositive, the Court will begin by describing the meaning of "properly filed."

Per the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas petitions brought by state prisoners are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). That limitations period is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment . . . is pending[.]" 28 U.S.C. § 2244(d)(2).

"The Supreme Court has defined 'properly filed' as 'when [an application's] delivery and acceptance are in compliance with the applicable laws and rules governing filings.'" *Williams v. Birkett*, 670 F.3d 729, 733 (6th Cir. 2012) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). In other words, a motion is properly filed if it satisfies "condition[s] to filing," even if it fails to satisfy conditions for "obtaining relief." *Artuz*, 531 U.S. at 11.

A good, but imperfect, rule of thumb is to ask whether a court would even consider a filing. If, for example, a court is flatly prohibited from considering a motion because it is untimely, then that motion is not properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Sometimes a rule may require "judicial scrutiny" to determine whether a filing is in fact properly filed. *Id.* at 414-15. Such rules are still conditions to filing: judicial inquiry into whether something is properly filed does not render that filing proper. *Id.*; *Williams*, 670 F.3d at 734.

The task now is to determine when Kares's limitations period began to run and, considering motions that tolled his time, whether and when the limitations period expired.  For Kares, the statute of limitations began to run on "the date on which the judgment [against him] became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Kares's request for leave to file a direct appeal was finally denied by the Michigan Supreme Court on September 29, 2014.  He had 90 days from September 29 to appeal to the United States Supreme Court, which he never did.  That 90-day period ended on December 28, 2014.  (R&R, PageID.1630.)  So Kares had until December 28, 2015, to file a habeas petition with this Court.  At first glance, then, Kares's habeas petition is untimely because he did not file until December 21, 2018.

But there was some tolling.  On October 20, 2015, with 69 days left to file a habeas petition, Kares filed his 6.500 motion for relief from judgment in the Shiawassee County Circuit Court.  (R&R, PageID.1631.)  That motion, which satisfied the filing requirements, qualified as a "properly filed application for State post-conviction . . . review" under section 2244(d)(2) and thus tolled the AEDPA's limitations period for the duration of the motion's review and appeal process. *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

The trial court denied Kares's motion, and the Michigan Court of Appeals refused leave to appeal.  The Michigan Supreme Court denied leave to appeal on December 27, 2017.  (R&R, PageID.1631.)  That same day, the statute of limitations began to run again.  It expired 69 days later, on March 6, 2018.  (*Id.*)  Unless the February 9, 2018 motion for DNA testing tolled the limitations period, Kares's December 21, 2018 habeas motion is untimely.

The R&R correctly concluded that the motion for DNA testing did not toll the statute of limitations for Kares because the companion motion for a new trial was not properly filed.  (*Id.*,

5

PageID.1637.)  This is an issue of first impression.  Examining the relevant Michigan statutes and court rules, the Court concludes that, for a movant who could only obtain a new trial through a successive motion for relief from judgment under Mich. Ct. R. 6.502(G), a motion for a new trial brought under Mich. Comp. Laws § 770.16 is "properly filed" only if the motion for DNA testing is granted and exculpates the movant.  If the motion for DNA testing is denied, or if the testing does not exculpate the defendant, then the motion for a new trial under section 770.16 is not "properly filed" and thus does not toll the statute of limitations.

Analysis begins with the statute permitting requests for DNA testing.  Mich. Comp. Laws § 770.16(1) arguably allows two distinct but simultaneous requests by movants: "[A] defendant convicted of a felony at trial on or after January 8, 2001 . . . may petition the circuit court [1] to order DNA testing of biological material identified during the investigation leading to his or her conviction, and [2] for a new trial based on the results of that testing."  The first request is a discovery motion, which does not toll the AEDPA's limitations period.  *Rideaux v. Perry*, No. 2:15-cv-10774, 2016 WL 1182729, at *2 (E.D. Mich. Mar. 28, 2016) (citing *Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001)).  A motion for a new trial, on the other hand, would toll the statute of limitations so long as that motion was "properly filed."  28 U.S.C. § 2244(d)(2).

For Kares, whether his motion for a new trial was properly filed depended on the success of his request for DNA testing.  Mich. Comp. Laws § 770.16 confers a *basis* for a new trial motion, but all motions for new trials are governed by Mich. Ct. R. 6.431.  *Accord* Mich. Ct. R. 1.104 ("Rules of practice set forth in any statute, if not in conflict with any of these rules, are effective until superseded by rules adopted by the [Michigan] Supreme Court."); *People v. Strong*, 539 N.W.2d 736, 738 (Mich. Ct. App. 1995) ("In resolving a conflict between a statute and a court rule, the court rule prevails if it governs practice and procedure.").  Where a defendant "is no

longer entitled to appeal by right or by leave," Rule 6.431(A)(4) instructs movants to "seek relief pursuant to the procedure set forth in subchapter 6.500."

Kares is out of appeals, so his motion for a new trial under section 770.16 must be treated as a motion for relief from judgment under Mich. Ct. R. 6.502. *See People v. Poole*, 874 N.W.2d 407, 412 (Mich. Ct. App. 2015) (suggesting in dicta that section 770.16 would be subject to the successive motion ban in Rule 6.502(G)). But Kares has previously made a Rule 6.502 motion. He is therefore hemmed in by the filing condition of Rule 6.502(G)(1), which generally prohibits the filing of successive motions under Rule 6.502. *Williams*, 670 F.3d at 733-34 (Mich. Ct. R. 6.502(G) is a filing condition). Absent an exception permitting some successive motions, discussed below, a successive Rule 6.502 motion is not considered properly filed and thus does not toll the statute of limitations for habeas petitions. *Id.* at 730 ("Because Michigan law does not allow the filing of second motions for post-conviction relief . . . [the petitioner's] second motion was not 'properly filed[.]'") (citing *Pace*, 544 U.S. 408).

Successive motions *are* permitted when they are based on "claim[s] of new evidence that was not discovered before the first [6.502] motion." Mich. Ct. R. 6.502(G)(2).[1] "'[N]ew evidence' includes . . . shifts in science[.]" Mich. Ct. R. 6.502(G)(3). Under Mich. Comp. Laws § 770.16(4), courts are to order DNA testing of evidence that "was not previously subjected to DNA testing or, if previously tested, will be subject to DNA testing technology that was not available when the defendant was convicted." Thus, a successful motion for DNA testing yields the kind of "new evidence" that permits a successive Rule 6.502 motion.

---

[1] Successive motions are also allowed following "a retroactive change in law that occurred after the first [6.502] motion," Mich. Ct. R. 6.502(G)(2), but this is not an asserted basis of Kares's motion for a new trial and thus is irrelevant.

Pulling everything together: a defendant, out of appeals and having previously filed a Rule 6.502 motion, may still seek a new trial under Mich. Comp. Laws § 770.16.  However, that motion for a new trial must be treated as a successive motion under Rule 6.502(G).  Whether that motion for a new trial is "properly filed" turns on the success of the companion motion for DNA testing.  If the motion for DNA testing is denied, or if testing is performed but does not point to another culprit, then there is no "new evidence" and hence no basis for a successive Rule 6.502 motion.  In such circumstances, a motion for a new trial brought through section 770.16 will not toll the AEDPA's limitations period.  Because his request for DNA testing was denied, Kares's section 770.16 motion did not toll the statute of limitations and his present habeas petition is untimely.

Kares objects that if his motion "was not properly filed then the trial court would have returned the motion citing it as defective and refus[ed] to adjudicate."  (Pet'r's Objs., PageID.1727.)  But the trial court only considered the request for DNA evidence.  Indeed, the court could not have examined the motion for a new trial *until* it decided the DNA issue.  "[I]t would be improper to deny DNA testing on the basis that a court concludes that it would deny a future motion for new trial regardless of the results of any DNA testing.  A court is not statutorily permitted to conflate the two phases of analysis."  *Poole*, 874 N.W.2d at 414.

And a motion is not "properly filed" simply because it is given some judicial consideration.  "[T]he Supreme Court . . . explicitly rejected the argument that rules that 'necessitate judicial scrutiny' . . . may not still be considered condition[s] to filing.'"  *Williams*, 670 F.3d at 734 (quoting *Pace*, 544 U.S. at 414-15).  The Sixth Circuit has held that Rule 6.502(G)(2), which requires courts to decide whether a filing falls within the exception permitting successive motions, is nevertheless a condition to filing.  *Id. Williams* controls here: Kares's motion for a new trial is subject to Rule 6.502(G), and whether that motion is properly filed is a question that cannot be determined until

the request for DNA testing has been resolved.  The act of determining whether a motion is properly filed does not render that motion properly filed.  *Pace*, 544 U.S. at 471.  Addressing the request for DNA testing is simply a component of that determination.

### 2. Equitable tolling

The AEDPA's one-year limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  The Sixth Circuit has repeatedly cautioned that equitable relief should be granted "sparingly."  *See, e.g.*, *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011); *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2003); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at 649 (citing *Pace*, 544 U.S. at 418).

Kares has not argued for equitable tolling, nor has he alleged any facts or circumstances that would warrant its application in this case.  His status as a *pro se* petitioner does not warrant tolling; tolling is even unwarranted where the petitioner is unaware of the statute of limitations.  *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing.").

There were no extraordinary circumstances preventing timely filing.  In fact, Kares knew about the evidence he now says should be tested.  (R&R, PageID.1639.)  Prior to trial, Kares hired his own expert to test the very same evidence he says should be tested now.  (*Id.*)  Kares's expert *did* test the evidence in question.  As the R&R puts it, Kares is "aware of those results, but [the

results] are not part of the state record, which suggests the results did not exculpate [Kares] in any way." (*Id.*)  These circumstances do not justify equitable tolling.

### 3. Actual innocence

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner.]'"  *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399-400.

Though Kares baldly asserts that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable juror would have convicted him.  *Schlup*, 513 U.S. at 327, 329.  Indeed, Kares's claim of innocence is not based on a claim that he had a consensual sexual encounter with the victim; he instead maintains that there was no sexual contact at all.  (*See* R&R, PageID.1622.)  Considering that his semen was found in the victim's vagina, a reasonable juror could easily have convicted Kares.  Because he has wholly failed to provide evidence of his actual innocence, he would not be excused from the statute of limitations under the AEDPA.

In sum, Kares's habeas petition is untimely.

**B. Merits**

The R&R also performed seventy pages of analysis on the merits of the petition's eleven asserted grounds for relief.  The R&R determined that the habeas petition should be rejected on the merits even if it was filed within the limitations period.  Kares objected to those conclusions.  The objections will be addressed on an issue-by-issue basis, in the order they are analyzed by the R&R.

### 1. Ground XI—Denial of motion for DNA testing

Kares claims his Fourteenth Amendment right to Equal Protection was violated when the Shiawassee County Circuit Court denied his motion for DNA testing.  (R&R, PageID.1646.)  The R&R found this claim non-cognizable on habeas review.  (*Id.*, PageID.1650.)  In his objection, Kares essentially argues that his motion for DNA testing was meritorious and thus the trial court's denial violated the imperative that "the states . . . apply its laws equally to similarly situated individuals." (Pet'r's Objs., PageID.1728.)  This objection is meritless.

As the R&R notes, habeas petitions cannot be used to "'challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.'"  (R&R, PageID.1648 (quoting *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)).)  "[T]he petition must directly dispute the facts or duration of confinement."  *Kirby*, 794 F.2d at 248.  Kares's challenge to the trial court's adjudication of a post-conviction discovery motion does no such thing.

Kares also takes issue with the R&R's statement that "clearly established federal law [i]s determined by the Supreme Court."[2]  (Pet'r's Objs., PageID.1728.)  It is not clear how this relates

---

[2] Kares repeats this argument many times in his objections.  Because the R&R correctly stated the law, the Court will not reconsider this argument each time it is reasserted.

to Issue XI because the R&R's disposition of Issue XI did not turn on whether some point of law was clearly established.  Either way, the R&R correctly stated the law.  This objection is denied.

### 2. Ground IV—Denial of Mich. Ct. R. 6.502 motion

Kares further challenges the denial of his first motion for relief from judgment under Mich. Ct. R. 6.502.  (R&R, PageID.1650.)  The R&R determined that Kares's claim was not cognizable on habeas review.  (*Id.*)  Kares objects that, because his motion "was never adjudicated on the merits" in state court, his claim is subject to *de novo* review.  (Pet'r's Objs., PageID.1728.)  Because the claim is subject to *de novo* review, he says, the "claim is cognizable on habeas review."  (*Id.*)  Kares misses the mark.  *Reviewability* is a separate question from *standard of review*.  A claim is not cognizable simply because it *would be* subject to a particular standard of review if the claim *were* reviewable. This objection is denied.

### 3. Ground I—Admission of hearsay over defense objection

At trial, a nurse who examined the victim after the sexual assault testified as to certain statements the victim made during the examination.  (R&R, PageID.1651.)  Counsel for Kares objected to that testimony as inadmissible hearsay; the trial court overruled.  Kares claims admission of that testimony violated his right to a fair trial and the Due Process Clause.

The R&R determined that admission of the testimony did not violate the Constitution.  (*Id.*, PageID.1655.)  Kares objects that the nurse gave testimonial hearsay and thus admission of her statements violated the Confrontation Clause.  (Pet'r's Objs., PageID.1729.)  It is true that the Confrontation Clause generally prohibits testimonial hearsay.  *Crawford v. Washington*, 541 U.S. 36, 53-56 (2004).  However, testimonial hearsay is admissible where the declarant appears at trial and is subject to cross-examination.  *Id.* at 59.  Here, the victim—the declarant—testified at trial and was subject to "unrestricted cross-examination" by the defense.  (R&R, PageID.1655.)

12

Assuming the nurse's statements qualified as testimonial hearsay, no Confrontation Clause violation occurred. Kares's objection is denied.

### 4. Ground II—Improper judicial conduct to enhance sentence

At sentencing, Kares claims that the trial court "relied upon inaccurate information when scoring [his] prior record and offense variables" and engaged in impermissible fact-finding to impose a lengthier sentence. (*Id.*, PageID.1656-1657.) He also claims that the trial court incorrectly applied the relevant statutory scoring guidelines. (*Id.*, PageID.1657.)

The R&R concluded that the incorrect scoring issue was "purely a state law claim," and thus "not cognizable on habeas review." (*Id.*) Kares objects to this finding, stating that his petition "clearly sets forth the *information* applied by the state court violates either or both . . . the 6th and 14th Amendments to the United States Constitution." (Pet'r's Objs., PageID.1730 (emphasis added).) But the R&R's statement clearly related to the erroneous *scoring* issue, not the improper *information* issue. Kares's objection on this point is therefore irrelevant and denied.

Examining the impermissible judicial fact-finding, the R&R concluded that the trial court's actions at sentencing were contrary to *Alleyne v. United States*, 570 U.S. 99 (2013) and *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015) (*Lockridge II*). According to the R&R, "[t]here is little question the trial court impermissibly relied on judge-found facts to score some of the variables when determining [Kares's] minimum sentencing guidelines range." (R&R, PageID.1660.) However, because Kares never raised such an argument to the trial court when he could have and needed to, the R&R determined that this issue was procedurally defaulted. (*Id.*, PageID.1660-1663.)

Kares objects that he *did* make such an argument in his first Rule 6.502 motion, and that he cited *People v. Lockridge*, 849 N.W.2d 388 (Mich. Ct. App. 2014) (*Lockridge I*) to support his position. But the only passage from his 6.502 motion that could possibly be construed as a judicial

fact-finding argument is too vague: "[a] trial court may not make an independent finding regarding a defendant's guilt[] of another offense to justify an offense variable scoring."  (ECF No. 21-10, PageID.1020.)  This statement came in the context of Kares's claim that he received improper enhancements based on acquitted conduct.  (*See id.*)  That argument does not relate to *Alleyne* and *Lockridge II*, which held that the U.S. Constitution invalidated Michigan's sentencing guidelines to the extent they required "judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range."  *Lockridge II*, 870 N.W.2d at 506 (emphasis in original).  Kares's citation to *Lockridge I*, partially reversed by *Lockridge II*, does not clarify the ambiguity in his 6.502 brief.  And worse, *Lockridge I* only discussed state law, not federal law.  Under the circumstances, it cannot be said that Kares "fairly presented" to the trial court any argument based on *Alleyne* and *Lockridge II*.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  Kares did not present a federal or constitutional judicial fact-finding argument when he needed to, and this ground for habeas relief is therefore procedurally defaulted.

The R&R further found that Kares's arguments about improperly scored offense variables were procedurally defaulted.  (R&R, PageID.1667-1670.)  Kares again objects that he properly raised the claims relating to the offense variables in state court.  (Pet'r's Objs., PageID.1729.)  The Court agrees with the R&R that Kares's arguments were too vague and shifted between stages of review, meaning he did not fairly present his claims to the trial court and at each stage of appeal.  (R&R, PageID.1667-1670.)  The result is procedural default.  Kares's objection is denied here.

The R&R did find one offense variable argument (OV 11 Argument) was properly raised and exhausted.  (R&R, PageID.1670.)  However, the state cout denied Kares's claims for relief based on the OV 11 Argument, and the R&R concluded that the state court's denial was not

14

contrary to or based on an unreasonable application of federal law.  (R&R, PageID.1671.)  The R&R thus recommended denying habeas relief on the OV 11 Argument.  Kares fails to object to this conclusion.  Kares likewise fails to object to the R&R's finding that his sentence was *not* based on inaccurate information.  (*Id.*, PageID.1671-1672.)

### 5.  Gound III—Improper lesser offense instruction by trial court

Kares argues that the trial court erroneously instructed the jury on third-degree criminal sexual conduct, suggesting that "the court so instructed the jury because the court believed that [third-degree criminal sexual conduct] was a lesser-included offense of [first-degree criminal sexual conduct]."  (*Id.*, PageID.1672.)  But, as the R&R notes, Kares, through counsel, was the one who requested the instruction on third-degree criminal sexual conduct.  (*Id.*, PageID.1675 (citing Trial Tr. II, ECF No. 21-6, PageID.852, 859-861).)  Kares objects that the R&R mistakenly "assum[es]" that he agreed to the challenged instruction when there is "not any evidence within the trial record to support such an assumption."  (Pet'r's Objs., PageID.1732.)  The evidence is that his own attorney requested the addition of the third-degree criminal sexual misconduct instruction.

Even if the instruction should not have been given, the R&R correctly states that Kares committed "invited error" and thus cannot obtain habeas relief.  (R&R, PageID.1676 (citing *Fields v. Bagley*, 275 F.3d 478, 485-86 (6th Cir. 2001)).)  Kares objects that if his own counsel "in fact invited the jury instruction," then this was ineffective assistance of counsel.  (Pet'r's Objs., PageID.1732.)  This argument will be addressed in section III.B.10 below.

### 6. Ground V—Misrepresentation of DNA evidence

At trial, a nurse who examined the victim after the sexual assault testified that she collected samples from the victim's anus and vagina.  (R&R, PageID.1678.)  The nurse did not indicate that she collected these samples in a report she drafted right after the examination.  (*Id.*, PageID.1679.)

15

Another witness, who tested the samples collected by the nurse, corroborated the nurse's testimony.  (*Id.*)  During closing arguments, the prosecutor "urged the jurors to infer that the report was in error," and argued that the samples, which tested positive for Kares's DNA, along with other evidence, demonstrated Kares's guilt.  (*Id.*)

In his amended petition, Kares argues that the prosecution misrepresented the DNA evidence to show a critical element of the offense—sexual penetration.  (*Id.*, PageID.1678.)  Kares contends that this misrepresentation was prosecutorial misconduct amounting to a Due Process violation.  However, this argument is based on the inconsistencies between the nurse's testimony and her examination report.  The R&R concluded that the inconsistencies simply created a question of fact, one that was resolved against Kares, and that he "failed to demonstrate that the prosecutor's arguments with regard to the DNA evidence rise to the level of prosecutorial misconduct that denied him due process."  (*Id.*, PageID.1680-1681 (citing *Coleman v. Jackson*, 566 U.S. 650, 655-56 (2012) (Due Process only violated where prosecutor urges inferences that are irrational)).)

Objecting, Kares mostly challenges the R&R's analysis on whether an anal swab was collected.  (Pet'r's Objs., PageID.1733.)  But, as the R&R points out, this is not enough.  "[E]ven if one accepted [Kares's] invited inference with regard to the anal swabs—that the inconsistency gives rise to reasonable doubt—that would not render unreasonable the allegedly invited inference that [Kares's] DNA on the cervical swabs evidence[d] penetration, an inference that is particularly reasonable because the victim testified" about vaginal penetration.  (R&R, PageID.1680.)  The cervical swabs were more relevant anyway, because Kares was convicted of vaginal, not anal, penetration.  With respect to the vaginal samples, Kares simply objects that "there was no record" of them being collected.  (Pet'r's Objs., PageID.1733.)  As explained in the R&R, the lack of such a record is not dispositive, it was simply inconsistent with the nurse's testimony about collecting

vaginal samples. That testimony was corroborated by other witnesses and evidence. Therefore, the jury could reasonably infer that vaginal samples were actually collected, despite the lack of a contemporaneous record indicating such. Kares's objections are denied.

### 7. Ground VI—Prosecution suppressed exculpatory evidence

"[S]uppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Kares claims that two pieces of evidence were suppressed by the prosecution in violation of *Brady*: his bedding and the victim's toxicology report. (R&R, PageID.1681.)

The R&R found these claims entirely meritless. Kares "concedes" the R&R's conclusions, but only "as to the legal standing of . . . [the] claim." (Pet'r's Objs., PageID.1734.) The Court is not sure what Kares means by "the legal standing of the claim." Nevertheless, it is irrelevant because Kares concurs that there was no *Brady* violation.

### 8. Ground VII—Failure to produce endorsed *res gestae* witnesses at trial

Kares argues that the prosecution was required to call two *res gestae* witnesses. (R&R, PageID.1684.) The R&R concluded that Kares was not entitled to relief because the requirement to call all *res gestae* witnesses comes from Michigan law—there is no federal analog. (*Id.*, PageID.1687-1688.) If the prosecution failed to do so, no constitutional violation occurred. "Michigan's requirement that prosecutors produce res gestae witnesses is a matter of state law, and its enforcement is outside the scope of [federal] review." *Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011).

Kares first objects that his claim "is centered upon the due process right to a fair trial." (Pet'r's Objs., PageID.1734.) That misses the point: the U.S. Constitution does not require prosecutors to call all *res gestae* witnesses and thus a prosecutor's failure to do so cannot amount

17

to a fair trial violation.  He also objects that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  (*Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).)  To that end, Kares says he was prejudiced when the prosecution did not call those two witnesses because he "was [left] without the ability" to call the witnesses himself.  (*Id.*, PageID.1735.)  He did not make this argument in his amended petition so the Court will not consider it.  Kares's objections are denied.

### 9. Ground VIII—Inadequate notice of State's intent to seek sentence enhancement

Kares claims that he did not receive fair notice of potential sentencing enhancements that would trigger based on his prior convictions if he was found guilty of third-degree criminal sexual conduct.  (R&R, PageID.1690.)  He says he was only informed of the potential consequences of a first-degree criminal sexual conduct conviction because the third-degree was added as a lesser-included offense at trial.  (*Id.*)  Kares argues this amounted to a Fourteenth Amendment violation.

The R&R spots the logical fallacy.  Kares was indicted on charges of first-degree criminal sexual conduct.  The indictment stated that "the prosecutor will seek a sentence enhancement because [Kares] had previously [been] convicted of three or more felonies."  (*Id.*)  Thus, it is of no consequence that Kares was ultimately convicted of third-degree criminal sexual conduct rather than first-degree criminal sexual conduct.

Kares knew from the outset that the prosecution would seek an enhancement and thus had ample opportunity to "prepare a defense against the enhancement."  (*Id.*, PageID.1692.)  Notice is adequate under the Due Process Clause so long as the indictment "fairly . . . informs the accused of the offense for which he is to be tried," *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986) such that "the accused may adequately prepare a defense[.]"  (R&R, PageID.1691 (citing *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)).)

18

Kares objects that he "was not provided notice as it relates to . . . sentence enhancement[s] regarding the lesser offense until the day of the sentencing."  (Pet'r's Objs., PageID.1735.)  But it is not clear why that matters.  Kares knew the prosecution would seek an enhancement based on prior convictions when he was charged with first-degree criminal sexual conduct.  Was he not prepared to argue against enhancements if he were convicted of first-degree criminal sexual conduct?  What changes if he is convicted of third-degree criminal sexual conduct?  The ultimate conviction does not matter here: Kares was accused of sexual assault and the prosecution said it would seek enhancements if he were convicted.  He had fair notice.  The objection is denied.

In his next objection, Kares points to Mich. Comp. Laws § 769.13(3), which "requires the prosecution to file notice of intent to seek an enhanced sentence within 21 days after the defendant has been convicted of the underlying offense or a lesser offense."  (Pet'r's Objs., PageID.1736.)  He says the prosecution failed to do so.  Whether the prosecution complied with a particular state law is irrelevant: habeas petitions cure federal violations only.  Kares had fair notice under the Fourteenth Amendment.  This objection is denied.

Finally, Kares objects that this Court has found there was "no notice to seek an enhanced sentence" with respect to the third-degree criminal sexual conduct conviction.  (*Id.* (citing 4/23/2021 Order, ECF No. 32).)  The referenced Order simply states that "there is no 'notice of sentence enhancement' such as [Kares] requests," i.e., the specific document he requested does not exist.  (4/23/2021 Order, PageID.1711.)  The Order goes on to conclude, as the Court again concludes today, that the indictment itself—which included a statement of intent to seek enhancements—provided sufficient notice.  (*Id.*, PageID.1711-1712.)  This objection is likewise denied.

### 10. Ground IX—Ineffective assistance of trial counsel

A successful ineffective assistance of counsel claim requires showing: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts must make "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of rebutting this presumption. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, 'the identified acts or omissions were outside the wide range of professionally competent assistance.'" (R&R, PageID.1693 (quoting *Strickland*, 466 U.S. at 690).) Deficient performance is irrelevant unless it affected the outcome of the case. *Strickland*, 466 U.S. at 691.

The standard is "doubly" deferential in the habeas context because the court is reviewing a state court's application of *Strickland*. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). On habeas review, the question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Such deference is not owed where the state court declined to address the defendant's claims on the merits.

The trial court did not address Kares's ineffective assistance of counsel claims on the merits. (R&R, PageID.1695-1696.) The R&R believed Kares's claims were procedurally defaulted, but nevertheless concluded that addressing the merits would offer the "more direct path to resolution." (*Id.*, PageID1695.) Consequently, the R&R reviewed Kares's infective assistance of trial counsel claims *de novo*. Kares concurs with that decision. (Pet'r's Objs., PageID.1736.)

In his amended petition, Kares claims that his trial counsel "failed to adequately investigate and present pictures of [Kares's] identifying marks and tattoos [and] . . . failed to investigate [] DNA evidence."  (R&R, PageID.1698.)

Kares has tattoos, including a large one depicting a dreamcatcher on his left thigh.  (R&R, PageID.1699.)  Defense counsel asked the victim if she remembered seeing any tattoos on Kares's thigh; she said she did not think so.  (*Id.* (citing Shiawassee Cnty. Cir. Ct. Order, ECF No. 21-11, PageID.1068-1069).)  "In his closing, trial counsel argued that the victim's inability to identify distinguishing features on [Kares's] naked body supported a finding of reasonable doubt."  (*Id.* (internal quotation marks omitted).)  But Kares's lawyer forgot to solicit any testimony affirming that Kares did, in fact, have tattoos.  The R&R found that this error fell outside the range of professionally competent assistance.  (*Id.*, PageID.1700.)

However, the R&R concluded that there was no prejudice.  (*Id.*, PageID.1700-1701.) Kares's defense was not that he had a *consensual* sexual encounter with the victim; instead, he claimed that there was no sexual encounter *at all*.  (*See id.*)  The presence of his semen in the victim's vagina severely undercut his defense.  And DNA evidence was clearly "of singular importance" to the jury.  (*Id.*, PageID.1701.)  Kares was accused of both oral and vaginal penetration, and his DNA was only found in the victim's vagina, not her mouth.  (*Id.*)  Kares was convicted of vaginal penetration but acquitted of oral penetration.  (*Id.*)  For this reason, the R&R determined that trial counsel's failure to properly elicit testimony about Kares's tattoos did not render the result "unfair or unreasonable[.]"  (*Id.*)

Kares essentially argues that effective assistance on the tattoo issue would have affected the outcome because it would have undermined the victim's credibility.  (Pet'r's Objs., PageID.1738.)  But, as the R&R notes, DNA evidence appeared to be the decisive factor.  The

21

victim provided strong testimony regarding both oral and vaginal penetration, and ostensibly faltered in failing to remember Kares's thigh tattoo.  Kares was convicted on vaginal penetration, for which there was DNA evidence, and acquitted on oral penetration, for which there was not. Kares has not convinced the Court that extra damage to the victim's credibility, whatever it would have been, could have overcome the DNA evidence inculpating him.  This objection is denied.

Onto the DNA evidence claim.  Kares maintains that the victim deposited his semen in her vagina "by transferring it from a used female condom" that Kares says "was thrown in his bathroom trash a few days before the alleged criminal sexual conduct."  (R&R, PageID.1701.)  He argues that his lawyer "did nothing to investigate" this claim.  (*Id.*, PageID.1702.)  The R&R found otherwise, concluding that "[c]ounsel was plainly aware of [Kares's] theory" and asked two forensic witnesses at trial whether they tested samples for foreign substances.  (*Id.*)  He "specifically explored" this theory with one of the witnesses, who "testified that if semen were transferred from a vaginal condom," there would be "DNA carryover from that third person," but said that there "was no such carryover in the samples tested[.]"  (*Id.*)

The R&R found "nothing in the record that forecloses the possibility that counsel in fact investigated the presence of foreign substances through the expert hired to conduct independent testing."  (*Id.*)  If trial counsel did not test the female condom, the R&R concluded that the decision was a sound exercise in strategy: "It may be that such testing was not conducted because the prospect of no test results—and no actual tests by the prosecutor's experts to rule out the possibility—put [Kares] in a better position to argue reasonable doubt."  (*Id.*)  The R&R discovered no ineffective assistance: "The flaw was in [Kares's] theory, not his counsel's performance," concluding that "counsel did the best that he could with an unconvincing theory."  (*Id.*, PageID.1703.)

Kares objects and argues that his attorney should have investigated his DNA-transfer theory more fulsomely.  (Pet'r's Objs., PageID.1738.)  But this fails to account for the R&R's reasoning that it may have been a smart and strategic decision to not test the female condom because counsel knew the prosecution would not test it.  To buttress his argument, Kares says his attorney's failure to investigate was significant because "unidentified male DNA was present in the samples collected."  (*Id.*, PageID.1739.)  In making this claim, Kares cites to Lori Bruski's laboratory report.  As far as the Court can tell, that report is not in the record.  But there is a record of Bruski's testimony at trial, where she unequivocally states that she found no third source of DNA.  (ECF No. 21-6, PageID.765 (Q: "[S]o the jury is clear, did you find a third source of DNA in any of your testing?" A: "No, I did not.").)  Kares has not shown that it was unreasonable for his counsel to not test the female condom, assuming no testing was performed, and has also failed to show that this decision affected the outcome of the trial.  His objections are denied.

The R&R also concluded that trial counsel did not provide ineffective assistance when he requested an instruction on third-degree criminal sexual conduct.  (R&R, PageID.1703.)  Noting the "compelling" DNA evidence against Kares, the R&R saw two potential strategies regarding instructions: (1) "all or nothing" or (2) "third option."  (*Id.*)  An attorney pursuing the first strategy would not have requested an instruction on third-degree criminal sexual conduct, while an attorney going the "third option" route would.

The "all or nothing" strategy is a gamble that the jury will decide the prosecution failed to prove a particular element of the offense and thus acquit the defendant.  But it is risky, especially where the defendant clearly did *something* wrong.  "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."  *Keeble v. United States*, 412 U.S. 205, 212-13 (1973).

For this very reason, the defense may find it desirable to present a "third option," a less severe offense with a less severe penalty for conviction.  *Id.*

Here, Kares's attorney went with the "third option" strategy.  Kares claimed he did not have sex with the victim, but his semen was found in her vagina and his "transference through a female condom" theory was far-fetched.  To prove first-degree criminal sexual conduct, the prosecution had to show that Kares forced or coerced the victim into committing sexual acts, and that the victim suffered physical injury during the course of those acts.  Third-degree criminal sexual conduct requires the same proof, except the prosecution does not have to show that the victim suffered physical injury during the assault.  Whether Kares caused physical harm sufficient to satisfy first-degree criminal sexual conduct may have been in doubt but, as observed in *Keeble*, this put him at extreme risk of a harsher conviction if no third option were offered.

In his objections, Kares indicates that he did not consent to the instructions and that his attorney committed ineffective assistance in requesting instructions for third-degree criminal sexual conduct.  (Pet'r's Objs., PageID.1740.)  Under the circumstances, his attorney made a reasonable judgment call.  There was no ineffective assistance of counsel and Kares's objection is denied.

Finally, the R&R notes a plethora of other ineffective assistance claims raised and later abandoned by Kares.  (R&R, PageID.1697-1698.)  The R&R therefore refused to consider those arguments.  (*Id.*)  Kares does not object.

### 11. Ground X—Ineffective assistance of appellate counsel

As with the previous claims, the R&R reviewed Kares's ineffective assistance of appellate counsel claims *de novo*.  (*Id.*, PageID.1696.)  Kares supports the R&R's use of this standard of review.  (Pet'r's Objs., PageID.1736.)  *Strickland* applies equally to appellate counsel as it does to

24

trial counsel: Kares must show that his appellate attorney was incompetent and that competent representation would have yielded a different outcome.

The R&R analyzes ten claims of ineffective assistance of counsel and recommends denying all of them.  Kares objects to two recommendations.

In his amended petition, Kares says his appellate counsel was ineffective for failing to raise the *Alleyne* judge-found facts issue on direct appeal.  It is true that his counsel did not do so.  (R&R, PageID.1705.)  But Kares himself did not raise an ineffective assistance claim on this ground until he sought leave to appeal denial of his motion for relief from judgment.  (*Id.*)  Thus, the issue is unexhausted.  Finding no means for Kares to seek a remedy in state court, and seeing no cause for Kares's failure to exhaust, the R&R concluded that this claim is procedurally defaulted.  (*Id.*)

Kares objects and states that the R&R "contradict[s]" itself because it previously concluded "that the trial court impermissibly relied on judge-found facts" in sentencing.  (Pet'r's Objs., PageID.1740.) There is no contradiction.  The R&R found that Kares *had* a viable claim—the trial judge likely impermissibly relied on judge-found facts—but that the claim was procedurally defaulted.  (R&R, PageID.1660-1663.)   The R&R then found that any claim of ineffective appellate assistance *predicated* on the judge-found facts claim was likewise procedurally defaulted.  (*Id.*, PageID.1705.)

Kares argues that procedural default should be forgiven where it is the result of ineffective assistance of counsel.  (Pet'r's Objs., PageID.1741 (citing *Coleman v. Thompson*, 501 U.S. 722, 254 (1991)).)  But this argument can only relate to the underlying *Alleyne* claim that his appellate counsel failed to raise.  Kares had no ineffective assistance of appellate counsel claim until his attorney provided allegedly ineffective assistance.  He offers no explanation why procedural

default of the latter claim should be excused given ineffective assistance with respect to the *Alleyne* claim.  This objection is therefore denied.

Kares also advances an ineffective assistance of appellate counsel claim based on his appellate attorney's failure to raise an ineffective assistance claim with respect to the trial attorney. (R&R, PageID.1708.)  The R&R recommends denying this claim because "[t]rial counsel did not render ineffective assistance."  (*Id.*)  Kares objects and asserts that trial counsel's assistance was ineffective.  (Pet'r's Objs., PageID.1741.)  This objection is denied because, as explained in Section III.B.10, the trial attorney did not provide effective assistance of counsel.

Finally, there are claims that the R&R did not consider.  In the brief supporting his amended petition, Kares states that he "has presented numerous issues herein that his Appellate Counsel failed to include[] within his direct appeal."  (Pet'r's Br., ECF No. 10-1, PageID.205.)  Following Kares's lead, the R&R "limit[ed] its analysis to claims [fitting] that description: claims that appellate counsel did not raise on appeal and that [Kares] raised in his amended petition."  (R&R, PageID.1704.)  Kares objects and maintains that the R&R should have reviewed the additional claims, but does not explain why.  (Pet'r's Objs., PageID.1740.)  The objection is therefore denied.

## IV. Conclusion

For the foregoing reasons, the Court denies all of Kares's objections and will adopt the R&R.  Kares's amended petition is untimely.  Even if it were filed within the statute of limitations, Kares's claims are meritless or otherwise procedurally defaulted.  An order, judgment, and certificate of appealability will enter consistent with this Opinion.

Dated:   August 3, 2021                           /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  UNITED STATES DISTRICT JUDGE